PEOPLE *v.* PERANIO.

1. CRIMINAL LAW—HOMICIDE—CONFESSION—NEW TRIAL.
    Where defendant, charged with murder, after being advised of his rights by the prosecuting attorney, confessed his knowledge of and participation in a hold-up resulting in murder, and, on arraignment in the circuit court, pleaded guilty, and the court, on examining him, as re-

quired by 3 Comp. Laws 1915, § 15830, was convinced that his confession was true and sentenced him to imprisonment for life, a motion for a new trial was properly denied.

2. HOMICIDE—MURDER COMMITTED IN PERPETRATING ROBBERY FIRST DEGREE—PARTICIPANTS GUILTY.

By statute, all murder committed in the perpetration or attempt to perpetrate any robbery is deemed murder in the first degree, and all parties knowingly aiding, abetting, or participating in a robbery so resulting are equally guilty.

Error to Jackson; Williams (Benjamin), J. Submitted October 11, 1923. (Docket No. 125.) Decided November 13, 1923.

Louis Peranio was convicted of murder in the first degree, and sentenced to imprisonment for life in the State prison at Jackson. Affirmed.

*Roscoe C. Griffith,* for appellant.

*John Simpson,* Prosecuting Attorney, and *Harry E. Barnard,* Assistant Prosecuting Attorney, for the people.

STEERE, J. On the night of September 17, 1921, at about 11 o'clock, a storekeeper named Louis Woloshen was shot and killed near his place of business in Jackson, Michigan, by a highway robber in a "holdup," as the transaction is termed.

It is stated in the brief of defendant's counsel that:

"The defendant on said night met Louis Martin and Tom Corbey, who solicited him to accompany them to the scene of the homicide, on the plea that they, said Martin and Corbey, were out of employment, funds and were hungry and that they wanted to hold up the deceased and obtain some money.

"After pleading with defendant, who at first refused, he loaned said Martin his revolver and took said

Martin and Corbey to the scene of the hold-up, said defendant remaining in the machine quite a long distance from the tragedy.

"After the crime the defendant remained in Jackson where he was employed, for several weeks, and work being slack he went to Grand Rapids, Michigan, where he was informed he could obtain employment, and did secure employment."

The record shows that defendant was arrested for complicity in the murder of Woloshen and taken back to Jackson on the morning of May 9, 1922, and there put in the county jail.    Later in the day the prosecuting attorney visited the jail and interviewed him in the presence of certain officers.    One of the circuit court stenographers of Jackson county was present part of the time and took in shorthand the questions asked of and answered by him relative to the crime.    He was first told that the party interviewing him was the prosecuting attorney of Jackson county who stated he wanted to ask him some questions about the Woloshen murder, saying: "You can answer them or not, as you see fit.    If you do answer them your answers may be used against you in a prosecution."    He then, in answer to questions, detailed the incidents of the tragedy so far as he claimed to know them.    In the interview the prosecuting attorney not only told him that he need not answer the questions and whatever he said might be used against him, but also told defendant he thought him guilty of murder and it was his duty as prosecuting attorney to prosecute him for that offense, and, such being the case, he did not want defendant to accept his statement or views as true, or act upon them.    He could be arraigned in court and tried if he desired, explaining to him the steps which would be taken to bring him before the court by a preliminary examination, where he could have his own attorney, and if bound over to the circuit court for trial the court would ap-

point an attorney to defend him if he did not have means to employ one. In answer to defendant's inquiry as to what his sentence would be if he pleaded guilty, the prosecutor answered he would receive a life sentence in the State prison, with possibility of the same being shortened later to 25 years, less good time, by parole or pardon, which would be a matter entirely in the hands of the governor and board of pardons.

Defendant having signified his intention to plead guilty, complaint and warrant were promptly prepared and he was taken before a magistrate where he was advised of his rights, waived examination and was bound over for trial to the circuit court, which was in session on that day. He was then arraigned under an information charging him with the crime of murder, to which he pleaded guilty. After a private examination separate and apart the court sentenced him to State prison for life.

Later counsel employed by or for him moved in the circuit court for a new trial on the ground that his constitutional rights had not been protected, filing in support of the motion his affidavit, in which he stated that the prosecuting attorney,—

"having obtained a statement from deponent then advised him that the best thing he could do was to plead guilty and not being acquainted with the court proceedings and believing that said prosecuting attorney was acting for the best interests of deponent, accepted his advice and entered a plea of guilty and within a space of about three hours from the time of his arrival in Jackson he had been hurried to the office of said prosecuting attorney and ushered into court.

"That deponent has a number of relatives in the city of Detroit that were and are able to employ counsel for said deponent and if said deponent had been given an opportunity to do so would have been represented in said cause of action and had an opportunity for a trial of his case.

"That said deponent is unable to understand the English language sufficient to know what the effect

would be for pleading guilty to said charge upon the advice of said prosecuting attorney."

Saying further that he did not commit the crime charged against him, was not present when it was committed, had nothing to do with the homicide, and if given a fair and impartial trial he would if found guilty at all be convicted of a much lesser offense than murder in the first degree.

He nowhere states or claims that the answers he gave to the prosecuting attorney as taken by the stenographer were untrue in any particular, his only claim being that because he did not expect anybody would be shot or killed in the hold-up and was not present when it was done he was not guilty of murder. An affidavit by the prosecuting attorney sustained by others who were present is in direct denial of any inducement or advice that it would be the best thing for him to plead guilty, but he was fully advised of his rights and the interview was in substance as already stated.

The reasons urged before the circuit court for a new trial are of like import as his assignments of error, which are as follows:

"1. The court erred in trying and disposing of said cause of action without granting to the said defendant the benefit of counsel.

"2. The court erred in trying and disposing of said cause without giving the defendant an opportunity to interview and take counsel with his relatives and friends and preparing to defend the charge against him.

"3. The court erred in accepting a plea of guilty from said defendant, which plea was advised by the prosecuting attorney of Jackson county, Michigan.

"4. The court erred in failing to ascertain from defendant the circumstances which induced him, the said defendant, to plead guilty and failed in his report to show that said plea was made freely, with full knowl-

edge of the nature of the accusation, and without undue influence.

"5. The court erred in denying the defendant's motion for a new trial of said cause."

The salient facts in the case as stated by defendant in his interview with the prosecuting attorney are in substance the same as those he stated to the circuit judge in the private interview given him after he pleaded guilty in connection with the court's investigation of the circumstances of his plea as required by section 15830, 3 Comp. Laws 1915.

In the so-called "judge's statement" filed in the case, apparently with reference to requirements of section 5, Act No. 403, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 182 [5]), the sentencing judge says in part:

"In a private interview, respondent stated that he and Louis Martin and Tom Corbey had had a conversation in which the other two men told him that they were going to hold up a man. Respondent claimed he didn't know his name, but knew he kept a store; that respondent let Martin have his loaded 38-caliber revolver for the purpose of the hold-up; that he knew they were going to stick up this man and rob him, but didn't know they were going to kill anybody; that if he had he would not have gone. Respondent admits that he took the two men in question in his automobile on the Saturday night in question, about 11 o'clock, and drove them out on Milwaukee street, not far from where the attempted robbery was committed; that there they got out of the car, and he remained with the car to wait for them; that he waited about twenty minutes; that he heard no shots, but that he waited about twenty minutes; that he heard no shots, but that during the time he was there a freight train came by and made a lot of noise, including whistling; that shortly Martin came back, and said, 'let's go;' that Martin was some excited, and said that Corbey was not coming; that he had gone away alone; that Martin told him that he had shot Woloshen three times, but did not know if he had killed him; that Martin said that Woloshen tried to grab his gun, and also started to holler and that he

shot him; respondent and Martin went home to 804 Railroad street, and that this was all he had to do with the crime."

In the court's opinion denying a new trial it is said in part:

"One of the reasons urged for a new trial is that the respondent was not given an opportunity to consult with relatives and friends and had no opportunity to be represented by counsel in said case.   The affidavit in support of this motion does not allege that the respondent was denied the right to see his relatives and friends or denied the right to have an attorney.   There is no showing made that he requested either one.   *   *   *   The court had no difficulty in conversing in English with this respondent.   While he does not speak English perfectly, it is apparent from the interview which the court had with him privately and from the stenographic transcript of the conversation with the prosecuting attorney, that he is capable of using the English language with little difficulty, and that he understands the same without any particular difficulty.   There can be no doubt as a matter of law, that if the respondent's confession is true, that he was aiding and assisting in the hold-up of Woloshen for the purpose of robbery, and was equally guilty of murder with the party who fired the fatal shot.   The court sees no foundation for the claim that respondent's confession was not voluntary and uninfluenced by fear or promises.   *   *   *   In fact he made substantially the same statement to the court in the private interview which the court had with him relative to his plea.   The principal points of such confession are embodied in the record in the judge's statement filed in the case, as required by law. The court is therefore of the opinion that the respondent understood the proceedings; that he made his confession freely and voluntarily, without any influence of any kind; that he was treated fairly by the officers, and the court believes his confession to be true."

While in this proceeding the views and findings of fact of the trial judge are not legally conclusive as in

case of return to certiorari, they are official, convincing and well supported by the record.

Defendant does not deny that the prosecuting attorney informed him of his right to be represented by counsel, or show by affidavit or otherwise that he was refused or ever requested the privilege of consulting counsel or communicating with friends or relatives. Defendant was a single man, 26 years of age, born in Italy. He came from there to this State when 13 years of age and for the last 13 years resided most of the time in Detroit and Jackson. He makes no claim that he ever suggested in his talks with the circuit judge and prosecuting attorney that he did not understand or could not express himself in the English language, or that he asked for an interpreter. The facts as to what was said to and by him at that time were persuasive that his claim of inability to understand English sufficiently to know what the effect of pleading guilty would be is an after-thought, as is also his most serious charge that the prosecuting attorney advised him to plead guilty. He gave the trial court no intimation to that effect when privately interviewed, and it is positively denied by the prosecuting attorney and others who were present and state in detail what was said during the interview.

Significant in support of the conclusion by the trial judge that defendant's plea of guilty was made freely and voluntarily, without undue influence and with full understanding of the nature of the charge against him, is the undisputed evidence that the prosecuting attorney told him he would be charged with murder, and, in answer to his inquiry as to what his sentence would be, replied the judge would have to sentence him for life, while he nowhere claims that his answers to the questions by the prosecuting attorney or his statement to the sentencing judge were in any particular untrue.

By statute all murder committed in the perpetration or attempt to perpetrate any robbery is deemed murder in the first degree, and all parties knowingly aiding, abetting or participating in a robbery so resulting are equally guilty.   As twice related by defendant, his knowledge of and participation in this hold-up, in perpetration of which a murder was committed, would constitute the crime of which he pleaded guilty.

The conviction and sentence will stand affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.